**COALITION FOR THE HOMELESS,**
Petitioner,

v.

**DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.**

No. 93–AA–556.

District of Columbia Court of Appeals.

Submitted Oct. 31, 1994.
Decided Jan. 26, 1995.

Deborah A. Tarasevich, was on the brief for petitioner.

Laryce Woodyear–Dowe was on the brief for respondent.

Before FERREN and KING, Associate Judges, and MACK, Senior Judge.

Opinion for the court by Senior Judge MACK.

Concurring opinion by Associate Judge KING at p. 378.

MACK, Senior Judge:

Petitioner, Coalition for the Homeless (hereinafter "Coalition"), appeals the decision of the Department of Employment Services Office of Appeals and Review's (hereinafter "OAR") decision finding the claimant, Robert Dawson, eligible for unemployment compensation. Petitioner claims that the OAR erred when "it substituted its own judgment of the credibility of the witness" for that of the appeals examiner when it found that the "decision was unsupported by substantial evidence." Petitioner also maintains that OAR's findings of fact and legal conclusion that Dawson did not resign are not supported by substantial evidence in the record. We hold that OAR erred when it reversed the appeals examiner based on the theory that the decision was unsupported by substantial evidence. We, therefore, reverse OAR's opinion and reinstate the appeals examiner's conclusion that Dawson voluntarily left his position and is ineligible for unemployment compensation.

1. Petitioner did not introduce into evidence, before the appeals examiner, a discrimination complaint filed with the Human Rights Agency.

## I.

Dawson was employed by the Coalition in 1991 as an assistant house director for the Davison House. During the hearing before the appeals examiner, Dawson introduced testimony that he experienced difficulties with co-workers and was the subject of discrimination.[1] Evidence was introduced by the Coalition regarding performance problems. In March 1992, due to a staff vacancy, Dawson, along with the rest of the staff, was required to work one weekend per month rather than his usual Monday through Friday schedule. Dawson felt that the change in scheduling warranted an explanation and requested a meeting with the executive director, Mrs. Flanagan–Montgomery.

On Friday, March 13, 1992, Dawson met with the executive and deputy executive directors. Dawson testified that during that meeting he stated, "And I told her that if certain things weren't changed, that I would be forced to resign." A letter from the executive director states that during the meeting, when Dawson was told that he would have to work weekends, he stated that he "would be forced to resign" and "would resign." According to the testimony of Ms. Fields, the Coalition's human resource specialist, Dawson approached her following the meeting and stated that he had just resigned his position. When she asked him to put his resignation in writing, as the Coalition's personnel manual required, Dawson stated that he had a meeting to attend and did not have time. Thereafter, Mr. Dawson left the premises because he was not scheduled to work again until Monday, March 16, 1992.

Unfortunately, Dawson was injured in an automobile accident on Sunday, March 15, 1992, and was unable to report to work on Monday, March 16, 1992. He spoke with someone from the Coalition who requested that he submit his written resignation. Dawson, who never returned to work, testified that the subject of this conversation was the accident, his inability to report for work, and the denial that he had resigned. On Tuesday, March 17, 1992, Dawson received a

OAR did not consider this matter which was not on the record for review.

hand-delivered letter, dated March 16, 1992, from the Coalition confirming his alleged oral resignation. On March 18, 1992, Dawson filed an initial claim for unemployment compensation with DOES. On March 30, 1992, he submitted a letter to Fields confirming his injury in the automobile accident and reaffirming his desire to return to work following his recovery. On April 13, 1992, a claims examiner made an initial determination that he was eligible for unemployment compensation. The Coalition, on April 30, 1992, appealed that determination arguing that Dawson voluntarily resigned his position.

The hearing before the appeals examiner took place on June 15, 1992. In addition to Mr. Dawson and Ms. Fields, Ms. Gage, Dawson's supervisor, testified. Several documents were also presented including the March 30, 1992, letter from Dawson to the Coalition, a June 12, 1992, letter from the Coalition's executive director stating that Dawson resigned on March 13, and the March 16 letter from the Coalition confirming his alleged resignation. On June 30, 1992, the appeals examiner issued her opinion. She found that Dawson resigned verbally to the executive director and did not establish good cause for leaving. Therefore, she reversed the initial decision and found Dawson ineligible for benefits.

On July 8, 1992, Dawson appealed the appeals examiner's decision to OAR. According to OAR's proposed decision, a leaving is presumed to be involuntary unless the employer presents evidence sufficient to support the contrary. In adopting the factual evidence presented by Dawson at the hearing, OAR noted that the employer's executive director was not present at the appeals hearing, and the evidence and witnesses offered by the employer to show a voluntary resignation were hearsay statements of the executive director. OAR concluded that the employer's witnesses could not rebut Dawson's testimony that he did not resign and therefore "is insufficient to support a finding that the claimant's leaving was voluntary."

The Coalition filed objection to OAR's proposed findings and decision on April 2, 1993. The Coalition argued that since the rules of evidence do not apply to agency proceedings, the agency should have considered the Coalition's statements and evidence submitted showing that Dawson did resign. It also argued that the evidence was reliable and credible and that one witness, Fields, testified from first-hand knowledge that Dawson told her following the meeting with the executive and deputy executive directors that he had just resigned. OAR responded with an addendum to its final decision on April 6, 1993, by further concluding "that the employer has failed to provide substantial and persuasive evidence that the claimant voluntarily resigned." Thus, OAR reaffirmed its original decision and deemed Dawson eligible to receive benefits. The Coalition timely appeals this decision.

## II.

■ We address the questions of whether Mr. Dawson left work voluntarily and whether OAR gave due deference to the appeals examiner's conclusion that he did so. "An employee who leaves work voluntarily without good cause connected with the work is disqualified from receiving unemployment benefits." *Washington Chapter AIA v. District of Columbia Dep't of Employment Servs.,* 594 A.2d 83, 85–86 (D.C.1991). However, as OAR noted, an employee's departure is presumed to be involuntary unless the employer fulfills its burden of proving the employee left voluntarily. *Id.* at 86 (citing *Hockaday v. District of Columbia Dep't of Employment Servs.,* 443 A.2d 8, 10 (D.C. 1982), *McLean v. District of Columbia Dep't of Employment Services,* 506 A.2d 1135, 1137 (D.C.1986), *Green v. District of Columbia Dep't of Employment Servs.,* 499 A.2d 870, 874 (D.C.1985)). The evaluation of whether the employee's departure was voluntary or not is made from all the circumstances surrounding the departure decision. *Id.* at 86.

■ "When OAR reviews an appeals examiner's decision, 'due deference must be accorded the credibility determinations of the examiner who heard and evaluated the evidence.'" *Shaw, Pittman, Potts & Trowbridge v. District of Columbia Dep't of Employment Servs.,* 641 A.2d 172, 174–75 (D.C. 1994) (quoting *Gunty v. Dep't of Employment Servs.,* 524 A.2d 1192, 1197 (D.C.1987)).

The examiner is in the best position to observe the witnesses and thus determine a factual dispute on factors, including the demeanor of the witnesses. Based on this fact, we have concluded that OAR " 'may not reject an appeals examiner's findings of disputed fact based on a resolution of witness credibility unless the examiner's findings are unsupported by substantial evidence.' " *District of Columbia v. District of Columbia Dep't of Employment Servs.*, 640 A.2d 1039, 1042 (D.C.1994) (quoting *Gunty, supra*, 524 A.2d at 1198). "OAR is bound by the factual findings supported by substantial evidence even if OAR would 'have reached a contrary result based on an independent review of the record.' " *Shaw, Pittman, supra*, 641 A.2d at 175 (quoting *Santos v. District of Columbia Dep't of Employment Servs.*, 536 A.2d 1085, 1088 (D.C.1988) (citation omitted)). Moreover, we note that substantial evidence means "more than a mere scintilla. It means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Washington Post Co. v. District of Columbia Unemployment Compensation Bd.*, 377 A.2d 436, 439 (D.C.1977) (citation and internal quotation marks omitted).

Here there are disputed facts regarding whether Dawson resigned verbally or not. Dawson testified that he did not resign. Fields testified that Dawson told her he had just resigned to the executive and deputy executive directors. In addition, letters from the executive director to Dawson and the Department of Employment Services confirming the resignation were provided to the appeals examiner. The appeals examiner, by explicitly finding that Dawson resigned verbally, rejected his oral testimony and instead found credible the oral testimony of Fields and the documentary evidence supporting her testimony. The question then becomes whether OAR's rejection of the appeals examiner's findings on the disputed facts can be sustained on the basis that those findings are unsupported by substantial evidence. "This presents an issue of law, which this court is in a position to address without need for deference to [OAR's] decision." *Gunty, supra*, 524 A.2d at 1198.

In rejecting the appeals examiner's factual findings, OAR explicitly adopted Dawson's version of the facts. OAR rejected the employer's evidence based on the conclusion that Fields' testimony was not based on personal knowledge and because the other evidence of a resignation was based on hearsay statements of the executive director in the form of letters and testimony. Because the employer has the burden of showing a voluntary departure, and because hearsay alone cannot meet this showing, OAR reversed the hearing examiner. Following an objection by the Coalition, OAR amended its original order to further ·reflect the conclusion "that the employer has failed to provide substantial and persuasive evidence that the claimant had voluntarily resigned."

■ OAR is correct that the letters from the executive director and part of Fields' testimony regarding what the executive director told her regarding the meeting with Dawson are hearsay. As we have stated:

hearsay evidence is not the kind of "substantial evidence" on which the agency can base its resolution of directly conflicting testimony. *See Jadallah v. District of Columbia Department of Employment Services*, 476 A.2d 671, 676–77 (D.C.1984) ("It is one thing to hold that hearsay evidence is admissible at agency hearings, but quite another thing to say that the direct sworn testimony of a witness on a crucial fact can be effectively refuted by hearsay, *i.e.*, the statements of persons not produced as witnesses—and hence not subject to cross-examination—when the party relying on such statements is in a position to call the declarants to the stand"), *cf. General Railway Signal Co. v. District of Unemployment Compensation Board*, 354 A.2d 529, 532 (D.C.1976) (unless person who answered questionnaires available for cross-examination, documents are " 'not reliable, probative, and substantial evidence' " in administrative "proceeding where impeaching evidence has been introduced") (citation omitted).

*McLean, supra*, 506 A.2d at 1138 (footnote omitted). The test applied by this court is: "hearsay found to be reliable and credible may constitute substantial evidence 'especial-

ly ... where the evidence is uncontradicted,' *Simmons [v. Police & Firefighters' Retirement & Relief Bd.]*, 478 A.2d [1093,] 1095 [ (D.C.1984) ]; but without extrinsic corroboration (proof *aliunde* ) such evidence will be 'scrutin[ized]' carefully. *Lim [v. District of Columbia Taxicab Comm'n]*, 564 A.2d [720,] 724 [ (D.C.1989) ]." *James v. District of Columbia Dep't of Employment Servs.*, 632 A.2d 395, 398 (D.C.1993).

In *James*, we held that reliable and credible hearsay in the nature of twenty-two disciplinary reports constituted substantial evidence. *Id.* at 396. However, here the hearsay evidence—letters from the executive director and Fields' testimony regarding what the executive director told her regarding the meeting with Dawson—was not the only evidence that Dawson resigned. Fields specifically testified that "He told me" that he resigned, and "Mr. Dawson came to my office and admitted that he had just resigned his position." It is well settled in this jurisdiction that an admission by a party opponent is admissible as substantive evidence. *See Chaabi v. United States*, 544 A.2d 1247, 1248 (D.C.1988) ("the statement was ... an admission of party opponent, and thus admissible not only to impeach, but also as affirmative evidence of the truth of the statement"). The other hearsay in the form of testimonial and documentary evidence was therefore not the basis for the ruling but corroborative of it. As we noted in *Gunty, supra*, "while Gunty did submit a document consisting of hearsay evidence, this document merely corroborated his own testimonial account of what had transpired ... and thus constituted substantial evidence for the hearing examiner's factual conclusion." 524 A.2d at 1198 n. 5. We have also noted that "evidence chiefly—though not exclusively—hearsay in nature constitute[s] 'substantial evidence.' " *James, supra*, 632 A.2d at 396. Here, the hearsay statements and letters only corroborated Fields' testimony that Dawson had resigned. Therefore, the appeals examiner's decision of voluntary departure was based on "more than a mere scintilla."

Fields' testimony along with the letters from the executive director, combined with the fact that the "appeals examiner was not required to explain why [she] favored one witness over another," *Gunty, supra*, 524 A.2d at 1198–99 (citations omitted), is enough to uphold the hearing examiner's opinion under a substantial evidence review by OAR. "[T]he examiner found the employer's witness credible, and absent some inherent implausibility in that finding, which we do not discern in this record, OAR was obligated to accept it." *Shaw, Pittman, supra*, 641 A.2d at 176. The factual finding by the appeals examiner turned on whether she believed Dawson or Fields since neither party presented other significant testimonial evidence and the employer's documentary evidence corroborated the testimonial evidence of Fields.

We hold that the testimony of the witnesses, together with the written documents submitted by the Coalition, provided more than sufficient support for the appeals examiner's finding that Dawson resigned. "Therefore, OAR's ruling that the employer did not meet its burden of showing that the [employee resigned] is plainly wrong." *Shaw, Pittman, supra*, 641 A.2d at 176. The appeals examiner's findings are supported by substantial evidence and OAR's rejection of those findings cannot be sustained. Because we find that OAR did not give the appeals examiner's findings proper deference in evaluating whether the opinion is supported by substantial evidence, we need not address whether OAR's findings are supported by substantial evidence. We, therefore, reverse and remand the case for reinstatement of the appeals examiner's determination that the employee is not entitled to unemployment compensation benefits.

*So ordered.*

KING, *Associate Judge*, concurring:

I join fully in the opinion of the court, but write separately to express my concern with what appears to be a disturbing trend in this agency. For the third time since April of 1994 we must reverse one of this agency's orders because the Acting Chief of the Office of Appeals and Review ("OAR") improperly rejected factual findings made by an appeals examiner who had conducted the hearing and

heard from and evaluated the witnesses who appeared.

In *District of Columbia v. Dep't of Employment Servs.*, 640 A.2d 1039 (D.C.1994), OAR reversed a finding of employee misconduct where the record showed considerable support for the appeals examiner's determination that a District of Columbia Department of Finance and Revenue employee used confidential information, which she learned of as a result of her employment, to file fraudulent personal income tax returns with the District. And, in *Shaw, Pittman, Potts & Trowbridge v. Dep't of Employment Servs.*, 641 A.2d 172 (D.C.1994), the appeals examiner's finding that the employee violated the employer's policy by drinking on the job, after he had been warned that such conduct violated work rules, was rejected by OAR even though there was more than ample evidence to support that finding. We have repeatedly said that an agency may not substitute its own assessment of the facts for that of the hearing examiner because doing so "would essentially scrap the principle of deference to the examiner who actually hears the testimony and is in the best position to make such determination." *Gunty v. Dep't of Employment Servs.*, 524 A.2d 1192, 1197 (D.C.1987). In this case OAR has again ignored the holding of *Gunty* and made a factual determination it was not permitted to make.

We are constrained by our authorities to defer to agency determinations properly within the scope of its responsibility. *See Proulx v. Police and Firemen's Retirement and Relief Bd.*, 430 A.2d 34, 35 (D.C.1981) ("An agency's findings of fact are conclusive on this court unless unsupported by substantial evidence in the record") (citation omitted); *see also Barry v. Wilson*, 448 A.2d 244, 246 (D.C.1982) (courts "must be particularly deferential to agency determination where the decision lies within the agency's expertise"). No less is expected of the agency itself when reviewing the actions of its subordinate officials.