### OFFICE OF MANAGEMENT AND BUDGET, Petitioner,

v.

### Tawanna F. WEBB, Respondent.

### No. 09–AA–1539.

District of Columbia Court of Appeals.

Submitted May 4, 2011.

Decided Sept. 22, 2011.

---

Ronald C. Machen Jr., United States Attorney, R. Craig Lawrence and Kymian D. Ray, Assistant United States Attorneys, were on the brief, for petitioner.

Respondent did not file a brief.

Before BLACKBURNE–RIGSBY, Associate Judge, REID,* Associate Judge, Retired, and SCHWELB, Senior Judge.

PER CURIAM:

The Office of Management and Budget (OMB) has asked this court to review the decision of an Administrative Law Judge (ALJ) of the Office of Administrative Hearings (OAH) awarding respondent Tawanna F. Webb unemployment compensation benefits. The ALJ's decision was not on the merits, but was based on OMB's failure to appear at a previously scheduled hearing. Ms. Webb has not filed a brief in this court, and the case is before us on the administrative record and the OMB's brief alone. Under the particular circumstances of this case, we vacate the decision of the OAH and remand for further proceedings consistent with this opinion.

I.

Ms. Webb is a former employee of the OMB, which is a federal agency within the Executive Office of the President. After leaving her employment with the OMB, Ms. Webb applied to the Department of Employment Services (DOES) for unemployment compensation benefits. On No-

* Judge Reid's status changed to Associate Judge, Retired, on April 7, 2011.

vember 5, 2009, however, a DOES Claims Examiner determined that Ms. Webb was ineligible to receive benefits because her "leaving was voluntary and not with good cause connected with the work."[1]

By letter dated November 13, 2009, Ms. Webb appealed from the Claims Examiner's determination, and she requested a hearing before the OAH. Ms. Webb's letter was addressed solely to the OAH, with no notice to the OMB. On November 18, 2009, the OAH issued a Scheduling Order notifying the parties that a hearing would be held on December 2, 2009. The Scheduling Order was accompanied by a Certificate of Service, which stated that on November 18, 2009, a copy of the Scheduling Order was sent by first-class mail to Ms. Webb and to the "Office of Management & Budget, Attn: Human Resources, 725 17th Street, NW, Washington, DC 20503."

Ms. Webb appeared *pro se* at the December 2, 2009 hearing. No OMB representative appeared. According to the OMB, this was because the agency had not yet received notice that Ms. Webb had applied for unemployment compensation benefits, or that those benefits had been denied by the Claims Examiner, or that Ms. Webb had filed an appeal with the OAH. The OMB represents that it received the Scheduling Order on December 11, 2009. The OMB further represents that mail addressed to the agency, which is located in the White House complex, must go through the mail-screening security procedures of the United States Secret Service before delivery to the OMB's internal offices. According to the OMB, this mandatory screening procedure causes substantial delays in delivery. In this case, because the agency had not received actual notice of the OAH hearing before it was scheduled to be held, no representative of the OMB appeared before the ALJ.

In light of the OMB's failure to appear, the ALJ decided by default that Ms. Webb was qualified to receive unemployment compensation benefits, and she reversed the Claims Examiner's contrary determination. After acknowledging the OMB's absence and explaining that the employer had the burden of proof, the ALJ advised Ms. Webb that:

> [U]nder the law I'm required to find you are qualified for benefits ... What I'm inclined to do is end the hearing right now, go with what the law tells me to do, find that you're qualified for benefits, and send you on your way and issue a written order.

On December 4, 2009, in a written Final Order, the ALJ formalized her oral ruling, reversed the Claims Examiner's determination, and held that Ms. Webb was qualified to receive benefits.

## II.

District of Columbia law provides unemployment compensation benefits to individuals who meet certain eligibility requirements. *See* D.C.Code § 51–109 (2001). Individuals who leave their "most recent work voluntarily without good cause connected with the work," however, are disqualified from receiving such benefits. D.C.Code § 51–110(a); *see also* 7 DCMR

---

1. The Claims Examiner wrote in pertinent part:

    You left your most recent employment because of personal reasons. Your letter of resignation states that you are leaving to pursue other employment opportunities and that you have a medical condition that you feel is impeding your organization's [sic] progress. In addition, you have also provided a statement from your doctor saying that you are not able to work at this time. It has been determined that you are currently not able to work and your leaving was voluntary and not with good cause connected with the work.

§ 311.1 (2010). Although an employee's "leaving [work is] presumed to be involuntary," an employer may rebut this presumption by "present[ing] evidence sufficient to support a finding ... that the leaving was voluntary." 7 DCMR § 311.3; *see also Berkley v. D.C. Transit, Inc.,* 950 A.2d 749, 757–58 (D.C.2008). The employer bears the burden of proving that the employee left voluntarily. *Berkley, supra,* 950 A.2d at 757–58; *see also Coal. for the Homeless v. District of Columbia Dep't of Emp't Servs.,* 653 A.2d 374, 376 (D.C.1995); *Green v. District of Columbia Dep't of Emp't Servs.,* 499 A.2d 870, 873 (D.C.1985).

In this case, the OMB asserts that it did not have a practical opportunity to meet its burden of proving that Ms. Webb voluntarily left her employment because the OAH did not provide the OMB with constitutionally adequate notice of the hearing. The OMB argues that as a result, the ALJ erred by effectively entering a default judgment against the OMB in favor of Ms. Webb.

An agency must provide notice " 'reasonably calculated to afford the party' an opportunity to be heard." *Carroll v. District of Columbia Dep't of Emp't Servs.,* 487 A.2d 622, 623 (D.C.1985) (per curiam) (quoting *Wise v. Herzog,* 72 App. D.C. 335, 337, 114 F.2d 486, 488 (1940)); *see also Kidd Int'l Home Care, Inc. v. Prince,* 917 A.2d 1083, 1086 (D.C.2007). Notice is constitutionally sufficient when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones v. Flowers,* 547 U.S. 220, 226, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)) (internal quotation mark omitted). Although in rare cases, actual notice may not be necessary, adequate notice by a method "reasonably certain to inform those affected" is required. *See Mullane, supra,* 339 U.S. at 315, 70 S.Ct. 652. Moreover, an appellate tribunal such as the OAH must "afford[ ] the parties [a] reasonable opportunity for [a] fair hearing...." *See* D.C.Code § 51–111(e). The OMB's primary claim before this court is that it was not afforded such a "reasonable opportunity."

In this case, as we have noted, the OAH sent notice of the hearing two weeks prior to its scheduled date. Even with the Thanksgiving holiday intervening, this would ordinarily be sufficient. Indeed, an agency procedure which results in a three-week delay from the date the correspondence is mailed to the agency to its receipt by the appropriate personnel appears on its face to be quite unreasonable, and the OMB has offered no evidence to the contrary beyond conclusory assertions.

The OMB nevertheless contends that in light of its necessary security procedures, the OAH did not provide the OMB with constitutionally adequate notice of the hearing. We question the validity of this contention, for the record is barren of any evidence suggesting that the OAH knew or should have known that a notice mailed two weeks before the hearing would not reach the appropriate representative of an employer, private or governmental, in ample time. We note that the OMB did not request the OAH to reopen the case, nor did it submit any evidence to the OAH regarding the necessity for the delay allegedly caused by the OMB's security procedures. Hence, the OAH has not had an opportunity to examine the argument that OMB now makes in this court regarding constitutional notice. On remand, the OMB should present evidence or testimony regarding the unusual circumstances which it now proffers led to the three-week delay in receiving the hearing notice to

enable the OAH to examine the OMB's argument.

The OMB further contends that "the District of Columbia has 'a strong judicial policy favoring a trial on the merits,'" *Kidd Int'l, supra,* 917 A.2d at 1088 (quoting *Dunn v. Profitt,* 408 A.2d 991, 993 & n. 3 (D.C.1979) (per curiam)), and, in particular, that default judgments against the United States government are disfavored. The point is well taken. Although not technically so denominated, the order awarding Ms. Webb unemployment compensation benefits was, in practical effect, a default judgment, albeit in an unliquidated amount. Rule 55(d) of the Federal Rules of Civil Procedure provides that "[a] default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court." The District of Columbia has a virtually identical rule which includes the District of Columbia, in addition to the United States. *See* Super. Ct. Civ. R. 55(e). In *Campbell v. Eastland,* 307 F.2d 478, 491 (5th Cir.1962), Judge John Minor Wisdom, writing for the court, articulated the broad and non-technical nature of the principles underlying Federal Rule of Civil Procedure 55(d): [2]

> The Rule rests on the rationale that the taxpayers at large should not be subjected to the cost of a judgment entered as a penalty against a government official which comes as a windfall to the individual litigant. The private party must first demonstrate that there is some basis on which he is entitled on the merits of his claim to receive judgment. A court should accord respect to this poli-

cy beyond the confines of Rule 55(e)'s strict coverage when it can do so without running against a countervailing consideration.

Similarly, in *Putnam Mills Corp. v. United States,* 202 Ct.Cl. 1, 479 F.2d 1334, 1341 (1973) (footnote omitted), the United States Court of Claims explained that:

> [The Rule] limits the entrance of default judgments against the United States as party defendant. While application of the New York arbitration decision to the issue in this case would not constitute entrance of a default judgment against the United States as such, it would serve to achieve the same result.... Rule 55 [ (d) ] counsels a policy of caution when a court is asked to enter a judgment against the United States in a case in which the evidence has not been adequately presented.

■ Accordingly, we vacate the order of the OAH for further proceedings regarding the OMB's constitutional notice contention and for a hearing on the merits.[3]

*So ordered.*

SCHWELB, Senior Judge, concurring in part and dissenting in part:

I agree with the court that the award of unemployment compensation in this case amounts "in practical effect, [to] a default judgment [against the United States], albeit in an unliquidated amount[,]" *ante,* at 606, and that in light of the authorities cited in the per curiam opinion, the award must be vacated and a hearing held on the merits of Ms. Webb's claim. I am also fully in accord with most of the analysis in

---

**2.** At the time *Campbell* was decided, what is now Rule 55(d) was Rule 55(e), but the language is virtually unchanged.

**3.** We note, however, that neither the ALJ nor this court is required to accord any deference

to the Claims Examiner's determination, which is reviewed *de novo. See Rodriguez v. Filene's Basement Inc.,* 905 A.2d 177, 179–80 (D.C.2006).

the opinion, of which I am a co-author. I part company with my colleagues, however, insofar as they order the OAH to conduct "further proceedings regarding the OMB's constitutional notice contention. . . ." *Ante* at 606.

I do not believe that any useful purpose would be served by such proceedings. In what I view as the unlikely event that the OMB were to prevail on that issue, it would be entitled to a hearing on the merits of Ms. Webb's claim. But even if the OAH were to reject the OMB's claim of lack of constitutionally adequate notice, the OMB would, pursuant to the authorities cited by the court, and in conformity with the court's own analysis, *still* be entitled to a hearing on the merits. The court is thus ordering a hearing on an issue which, regardless of how it is resolved, will make absolutely no difference to the outcome of Ms. Webb's claim for unemployment compensation.

Further, the OMB is now represented by the United States Attorney, and it will assuredly be given proper and timely notice of the hearing that is to be held after remand. The compensation award to Ms. Webb at the original hearing on December 2, 2009, as to which the OMB claims constitutionally deficient notice, has now been set aside by this court. Accordingly, any question as to the sufficiency *vel non* of the notice of the 2009 hearing has been rendered entirely academic.

Moreover, even if there were some hypothetical reason for the OAH to evaluate the OMB's contention that it received constitutionally insufficient notice of the originally scheduled hearing, this would not be an appropriate occasion to examine the issue. Ms. Webb is not represented by counsel, and she did not participate at all in the proceedings before this court. There is no incentive for her, on remand, to litigate a question which will not affect her right to unemployment compensation, or to retain counsel for that purpose. There would realistically be no adversarial crossing of swords in relation to the constitutional contention presented by the OMB, and the case would therefore lack "that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests. . . ." *United States v. Fruehauf,* 365 U.S. 146, 157, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961). I therefore respectfully dissent from the majority's direction to the OAH to hold a hearing on the OMB's claim that it did not receive adequate notice of Ms. Webb's claim.